

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**WILLIAM CURTIS BRIGHT,**

    Plaintiff,

v.                                                          Civil Action No. **3:18CV657**

**DR. BROOKS,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

William Curtis Bright, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action[1] in which he alleges that Dr. Michael Brooks and Dr. Qing Liu violated his Eighth Amendment rights[2] when they provided inadequate medical care for his broken toe.[3] This matter is before the Court on Defendants Brooks's and Liu's Motions for Summary Judgment. (ECF Nos. 31, 33.) Defendants Brooks and Liu provided Bright with the appropriate *Roseboro*[4] notice. (ECF No. 31, at 2; ECF No. 35.) Bright responded. (ECF No.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. AMEND. VIII.

[3] The Clerk is directed to amend the docket to reflect the correct spelling of the name of Defendant Brooks.

[4] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

36.) For the reasons stated below, Defendants' Motions for Summary Judgment will be GRANTED.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "*scintilla* of evidence" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to

support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of his Motion for Summary Judgment, Dr. Liu submitted: his own affidavit (Mem. Supp. Mot. Summ. J. Ex. 2 ("Liu Aff."), ECF No. 32–2), and copies of Bright's medical records (*id.* Ex. 1, ECF No. 32–1).[5] In support of his Motion for Summary Judgment, Dr. Brooks has submitted: (1) his own declaration (Mem. Supp. Mot. Summ. J. Ex. 1 ("Brooks Decl."), ECF No. 34–1); and, (2) copies of Bright's medical records (*id.* Ex. A, ECF No. 34–2). Bright responded by submitting an unsworn, notarized memorandum.[6] (ECF No. 36.)

At this stage, the Court must assess whether Bright "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Bright's complete failure to present any evidence to counter Defendants'

---

[5] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. As there is no dispute as to the accuracy of their statements, the Court omits from the quotations and citations to Dr. Brooks's Declaration and Dr. Liu's Affidavit any citation to the underlying medical records.

[6] Although Bright's memorandum bears a notary's seal and was acknowledged before a notary, it does not contain a jurat. An acknowledgement is used to verify a signature and to prove that an instrument was executed by the person signing it, whereas a jurat is evidence that a person has sworn as to the truth of the contents of the document. In an acknowledgement, unlike a jurat, the affiant does not swear under oath nor make statements under penalty of perjury. *See Strong v. Johnson*, 495 F.3d 134, 140 (4th Cir. 2007) (explaining that a jurat uses words "subscribed and sworn" and demonstrates an oath was rendered); *Goode v. Gray*, No. 3:07cv189, 2009 WL 255829, at *2 n.6 (E.D. Va. Feb. 3, 2009). Thus, the memorandum fails to constitute admissible evidence.

Although Bright swore that the contents of his Complaint "are true to the best of his information and belief," (ECF No. 1–1, at 1), such a statement fails to transform the allegations in the affidavit or Complaint into admissible evidence. *Hogge v. Stephens*, No. 3:09cv582, 2011 WL 2161100, at *2–3 & n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief as "mere pleading allegations" (quoting *Walker v. Tyler Cty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2011))).

Motions for Summary Judgment permits the Court to rely solely on Defendants' submissions in deciding the Motion for Summary Judgment.

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Bright.

## II. SUMMARY OF UNDISPUTED FACTS

### A. Medical Care from June 24, 2018 until June 30, 2018

In June 2018, Bright was incarcerated in the Meherrin River Regional Jail ("MRRJ"). (Compl. 3–4.) On June 24, 2018, Bright appeared in the MRRJ medical department. (Brooks Decl. ¶ 5.) Bright complained that he had injured a toe on his left foot while playing basketball. (*Id.*) Bright told the nurse on duty that he was in constant, moderate pain. (*Id.*) Bright was unable to bend the third and fourth toes on his left foot and was unable to bear weight on that foot. (*Id.*) Bright was provided with "400 mg of ibuprofen twice daily for five days and orders were provided by the on-call physician . . . for [Bright] to have an X-ray series of the left foot for further evaluation." (*Id.*)

On June 25, 2018, Bright's left foot was X-rayed. (*Id.* ¶ 6.) Dr. Brooks agreed with the radiologist's conclusion that Bright had sustained "an acute displaced fracture of the third toe." (*Id.*) That same day, Dr. Brooks

> ordered an urgent consultation referral request for the orthopedics department division at the Virginia Commonwealth University ("VCU") in South Hill, so [Bright] would receive more definitive care for the left third toe fracture. As noted on the referral form when the referral request is marked urgent it is to be completed within 7 days of the request being made.

(*Id.* ¶ 7.) On June 27, 2018, the referral request was approved and Bright was scheduled to be seen at VCU orthopedics. (*Id.* ¶ 8.) Dr. Brooks believed that, given the "acuity level" he had observed, Bright's appointment was timely. (*Id.*)

On June 28, 2018, the nursing staff at MRRJ contacted Dr. Brooks and, pursuant to their request, he increased Bright's pain medication to "ibuprofen 800 mg twice daily for two weeks." (*Id.* ¶ 9.) June 30, 2018 was Dr. Brooks's "last day at MRRJ due to a change in the healthcare subcontractor at the jail." (*Id.* ¶ 10.) After his departure from MRRJ on June 30, 2018, Dr. Brooks "had no further contact with [Bright]," and has had no further involvement with Bright's health care. (*Id.*)

As of June 30, 2018, "it was [Dr. Brooks's] opinion and belief, to a reasonable degree of medical probability, that [Bright] would have an orthopedic consultation at VCU within the seven day time frame that [Dr. Brooks] had requested when [he] submitted the urgent referral paperwork on June 25, 2018." (*Id.* ¶ 12.)

### B. Medical Care from July 1, 2018 Forward

"Beginning on July 1, 2018, pursuant to [his] employment with MEDIKO, [Dr. Liu] began caring for prisoner-patients at" MRRJ. (Liu Aff. ¶ 3.)

On July 2, 2018, "Bright had an initial visit with Mari Adams, PA at the CMH Orthopaedic Service in South Hill, a division of VCU Health. PA Adams noted that Mr. Bright had a displaced fracture, and that he reported moderate pain that improved some with rest." (Liu Aff. ¶ 10.) PA Adams concluded that Bright had a displaced fracture and would require an open reduction and internal fixation ("ORIF"). (*Id.* ¶¶ 6, 10.) ORIF is a procedure that involves

> surgically repositioning the broken bones into proper alignment, the "open reduction," as opposed to physical movement of the bones without surgery, a "closed reduction." An implant is then inserted to fix the bones into the correct

5

place, the "internal fixation," as opposed to a form of external fixation like casting.

(*Id.* ¶ 6.) "Following this visit, nursing documented that Mr. Bright was in no acute distress with no complaints, and that he was ambulating well at a steady gate." (*Id.* ¶ 10.)

On July 8, 2018, Dr. Liu reviewed the notes from Bright's orthopedic consultation. (*Id.* ¶ 11.) On July 9, 2018, Dr. Liu "completed a Utilization Management Consultation Request seeking formal approval [for] the fixation surgery at VCU. The procedure was approved on July 11, 2018, and Mr. Bright's follow-up appointment was scheduled for August 7, 2018 at 10:10 am." (*Id.*) Dr. Liu swears that he does

> not have any roll in scheduling outside medical appointments once a Utilization Management Consultation Request has been approved. Mrs. Deberry, an employee of MRRJ, oversees scheduling outside medical appointments. She schedules approved outside appointments on a "first available" basis. It is my understanding that if a certain outside health care provider like CMH does not have a reasonably available appointment, Mrs. Deberry may seek an appointment with another provider of the same type. For example, another orthopedist like Colonial Heights Orthopedics.

(*Id.* ¶ 12.) Dr. Liu further states he does "not know why [the August 7] appointment was scheduled with Colonial Heights Orthopedics as opposed to CMH." (*Id.* ¶ 13.)

On July 12, 2018, Bright asked about his appointment. (*Id.* ¶ 14.) Bright was informed that an appointment was scheduled. (*Id.*) "[D]ue to security concerns medical staff cannot convey outside appointment dates to inmates pursuant to Virginia DOC policy." (*Id.*)

"On July 16, 2018, Mr. Bright was seen at sick call to follow-up on his offsite orthopedic appointments." (*Id.* ¶ 15.) Dr. Liu ordered X-rays "to determine whether any additional injury or significant change existed." (*Id.*) The X-rays showed that "Bright's fracture was unchanged and not yet healed." (*Id.*)

On July 24, 2018, Dr. Liu "saw Mr. Bright again in sick call to review the status of his toe fracture." (*Id.* ¶ 16.) Dr. Liu "noted that x-rays showed a subacute fracture,

meaning a fracture that has existed for more than 30 days. [Dr. Liu] also noted that Colonial Heights Orthopedics was now planning a fixation procedure. [Dr. Liu] continued ibuprofen and ordered the staff to check on Mr. Bright's surgery." (*Id.*) At this time, Dr. Liu did not know whether the August 7, 2018 surgical appointment existed. (*Id.*)

"On August 7, 2018, Mr. Bright was seen at Colonial Heights Orthopedics. Like CMH, Colonial Heights Orthopedics recommended ORIF of the injured toe. When Mr. Bright returned from this appointment, nursing [staff] documented that he had an orthopedic boot on and demonstrated no distress." (*Id.* ¶ 18.) That same day, Dr. Liu submitted another Utilization Management Consultation Request seeking to schedule the surgery. (*Id.*) "The request was approved on August 16, 2018, and an appointment was made for August 27, 2018." (*Id.*)

"On August 12, 2018, Mr. Bright again inquired about the status of his surgery and was referred to sick call. On August 16, 2018, [Dr. Liu] ordered continued ibuprofen for Mr. Bright's pain." (*Id.* ¶ 19.)

"On August 27, 2018, Mr. Bright was transported to Southside Regional Medical Center for the fixation procedure, performed by Dr. Prakash of Colonial Heights Orthopedics." (*Id.* ¶ 20.) Upon Bright's return to MRRJ, Dr. Liu "ordered that [Bright] could return to general population . . . if he was stable, that he be given ibuprofen, and that he be placed on the sick call list for the next day." (*Id.*)

Dr. Liu swears that

> Mr. Bright required no more surgery on August 27 than he required on July 2. Any delay in the scheduling of Mr. Bright's surgery between July 24 and August 27, 2018 was outside of my control and did not risk any more harm to Mr. Bright than he suffered during his original injury. Moreover, I provided continuous care and treatment to him during that period.
> Mr. Bright received treatment in the form of monitoring, painkillers, and outside specialty care from the time he injured his foot . . . through the end of

7

the post-surgical follow-up period. Contemporaneous notes indicate that during that period he was calm and in no distress.

(*Id.* ¶¶ 21–22 (internal paragraph number omitted).)

When Dr. Liu saw Bright in follow-up for his surgery, Bright was doing well. (*Id.* ¶ 23.) Dr. Liu "wrote orders to regularly change his dressings and administer ice and ibuprofen, and to obtain Dr. Prakash's follow-up instructions." (*Id.*) On August 30, 2018, Dr. Liu "filled out another Utilization Management Consultation Request seeking a surgical follow-up visit pursuant to Dr. Prakash's recommendation. This request was approved on August 31, and Mr. Bright's follow-up appointment was set for September 4, 2018. The appointment was carried out as scheduled." (*Id.* ¶ 24.) When Bright was seen on September 12, 2018, he denied experiencing any pain in his toe. (*Id.* ¶ 25.) On September 19, 2018, Bright was transferred from MRRJ and Dr. Liu has not treated him since that date. (*Id.*)

Dr. Liu swears that he did not act with deliberate indifference and notes:

> I sought, and gained approval for, the treatment (ORIF surgery) recommended by his outside, specialty orthopedic providers. Once approved, I had no role in scheduling this treatment. But I followed-up numerous times in July and August 2018 to keep Mr. Bright's treatment moving along until he received the required surgery. And during the interim, I . . . provided Mr. Bright treatment and care in the form of monitoring and painkillers. I knew that the delay would not cause substantial harm to Mr. Bright.

(*Id.* ¶ 26.)

### III. ANALYSIS

In his Complaint, Bright suggests that Dr. Brooks and Dr. Liu were indifferent to his suffering and failed to provide prompt and appropriate medical care, violating his Eighth Amendment rights.

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement . . . [and] ensure that inmates receive adequate food, clothing, shelter,

8

and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "To that end, a prison official's deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal quotation marks and citation omitted).

Prisoners alleging that they have been subjected to unconstitutional conditions of confinement—such as deliberate indifference to medical needs as Bright claims here—must satisfy the Supreme Court's two-pronged test set forth in *Farmer v. Brennan*. *Id.* Accordingly, to survive a motion for summary judgment on an Eighth Amendment claim, a plaintiff must demonstrate: (1) that *objectively* the deprivation suffered or harm inflicted was "'sufficiently serious,' and (2) that *subjectively* the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) (emphasis added). For the objective prong, a plaintiff must show a serious medical need. *Scinto*, 841 F.3d at 225. A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Webb v. Hamidullah*, 281 F. App'x 159, 165 (4th Cir. 2008) (citing *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).

The subjective prong of an Eighth Amendment claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his or her person. *Farmer*, 511 U.S. at 837. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). To satisfy the subjective prong,

9

plaintiffs must show that prison officials acted with a sufficiently culpable state of mind:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference.

*Farmer*, 511 U.S. at 837.

*Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm. . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

### A. <u>Dr. Brooks</u>

Bright fails to establish that Dr. Brooks acted with deliberate indifference. Rather, the record reflects Dr. Brooks was attentive and responsive to Bright's injury. Upon learning that Bright had sustained a displaced fracture of his toe, Dr. Brooks promptly requested that Bright be examined by an orthopedic specialist. Dr. Brooks's request was approved and Bright was

examined by an orthopedic specialist a few days later. In the interim, Dr. Brooks prescribed pain medication to alleviate Bright's discomfort. When Dr. Brooks stopped working at MRRJ on June 30, 2018, no evidence suggests that he was acting with deliberate indifference to a substantial risk of serious harm facing Bright. Because Bright has failed to demonstrate deliberate indifference, Dr. Brooks is entitled to summary judgment on Bright's Eighth Amendment claim.

### B. Dr. Liu

Similarly, Bright fails to demonstrate that Dr. Liu acted with deliberate indifference to Bright's broken toe.[7] The record indicates that Dr. Liu first learned of Bright's need for surgery on July 8, 2018. The next day, Dr. Liu "completed a Utilization Management Consultation Request seeking formal approval [for] the fixation surgery at VCU. The procedure was approved on July 11, 2018, and Mr. Bright's follow-up appointment was scheduled for August 7, 2018 at 10:10 am." (Liu Aff. ¶ 11.) After the follow-up appointment, Dr. Liu promptly submitted another request for the approval of the recommended surgery. Shortly thereafter, the request was approved and the surgery was successfully performed. No evidence suggests that Dr. Liu could have accelerated the timing of the surgery. Both before and after the surgery, Dr. Liu monitored Bright's condition and prescribed pain medication to alleviate Bright's discomfort. In short, the record refutes the notion that Dr. Liu acted with deliberate

---

[7] Bright asserts that if he had been treated more promptly, his toe simply could have been "set," instead of rebroken during the ORIF procedure. (ECF No. 36, at 5.) Bright is not competent to make such a medical diagnosis. *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001); *cf. Raynor v. Pugh*, 817 F.3d 123, 131 (4th Cir. 2016) (Keenan J., concurring) (explaining that a layperson's interpretation of medical tests or "speculation regarding the causes" of a condition "constitute conclusory and inadmissible lay opinion"). Moreover, the record indicates that the nature of Bright's broken toe always required an ORIF.

11

indifference.[8] Because Bright has failed to demonstrate deliberate indifference, Dr. Liu is entitled to summary judgment on Bright's Eighth Amendment claim.

## IV. CONCLUSION

Defendants' Motions for Summary Judgment (ECF Nos. 31, 33) will be GRANTED. Bright's claims will be DISMISSED. The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

M. Hannah Lauck
United States District Judge

Date: JAN 23 2020
Richmond, Virginia

---

[8] This conclusion is not altered by Bright's complaint that he experienced pain both before and after the surgery. "It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). The Eighth Amendment does not require "prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment." *Id.* So long as medical staff respond reasonably to an inmate's complaints of pain, the inmate's Eighth Amendment rights are not violated. *See Brown v. Harris*, 240 F.3d 383, 389–90 (4th Cir. 2001).

12